UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESE SWENSON, | No. 2:14-CV-02629-KJM-CMK |
| Plaintiff, | |
| v. | ORDER |
| AMTRAK and DOES 1 to 100 inclusive,[1] | |
| Defendants. | |

Therese Swenson alleges contract and emotional distress claims against the National Railroad Passenger Corporation, commonly known as Amtrak. The matter is before the court on Amtrak's motion to dismiss her first amended complaint. The court held a hearing on

---

[1] The Ninth Circuit has held that if a defendant's identity is not known before the complaint is filed, a "plaintiff should be given an opportunity through discovery to identify the unknown defendants." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quotation marks omitted) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff is warned, however, that Doe defendants will be dismissed if "it is clear that discovery would not uncover the[ir] identities or that the complaint would be dismissed on other grounds." *Id.* (quotation marks omitted) (quoting *Gillespie*, 629 F.2d at 642). She is also warned that Federal Rule of Civil Procedure 4(m) is applicable to Doe defendants. That rule provides the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless good cause is shown. *See Glass v. Fields*, No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).

1

1  May 8, 2015.  Case A. Colaw appeared for Amtrak and Barbara Norman appeared telephonically

2  for Ms. Swenson.  The motion is granted in part with leave to amend.

3  I.     BACKGROUND

4  The complaint alleges as follows:  On November 13, 2012, Therese Swenson

5  purchased a round-trip ticket on the Coast Starlight train from Dunsmuir, California to Seattle,

6  Washington. First Am. Compl. 5–6, ECF No. 6.[2]  Her ticket shows she is a senior and an Amtrak

7  Guest Rewards member.  *Id.* at 6.  She had traveled by train eight times in the preceding eleven or

8  twelve weeks without incident.  *Id.* at 8.  On November 15, 2012, Ms. Swenson departed for

9  Seattle.  *Id.* at 11.  On her way she asked the conductor three or four times if she could move to a

10 nearby vacant seat, but the conductor said no, that seat was reserved.  *Id.*  Despite discomfort in

11 her knees, she stayed in her seat throughout the fifteen-hour trip.  *Id.*  Her distress only increased

12 when another passenger, a man, twice placed his hand on her leg "and made a salacious

13 comment."  *Id.*

14 Ms. Swenson was scheduled to return to Dunsmuir on November 18, 2012.  *Id.*

15 at 5.  The day before, she called an Amtrak agent to express her anxiety about the return trip.  *Id.*

16 at 11.  She explained her knee surgeries and desire to switch seats or stretch out across two seats

17 if both were available.  *Id.*  She also told the agent about her experience with the "overly friendly

18 man" on the way to Seattle.  *Id.*  The agent assured her she could move to another vacant seat if

19 one was available because "a coach ticket is not assigned seating."  *Id.*

20 She boarded the return train as scheduled on November 18 and took a seat near the

21 front of the empty train.  *Id.*  She placed her sweater on the seat next to her.  *Id.*  She was sitting

22 quietly when a conductor named Rene arrived.  *Id.* at 8, 11.  Rene asked Ms. Swenson to remove

23 her sweater; another passenger had boarded the train in Olympia and would sit in that seat until

24 the train arrived in Kelso, Washington.  *Id.* at 11.  Ms. Swenson asked if she could move to a pair

25 of vacant seats behind her, but Rene said that if she wished to use two seats, she would have to

26

27
      [2] Unless otherwise noted, citations to the complaint are to the page numbers applied by the
28 CM/ECF system.

2

1  pay for both. *Id.* Confused, Ms. Swenson asked if coach seats were actually assigned seating,
2  contrary to what the agent had assured her the day before. *Id.*

3  Rene left, warning Ms. Swenson she would return with a colleague. *Id.* Another
4  conductor, Don, soon arrived and told Ms. Swenson he had called the police to escort her off the
5  train. *Id.* Ms. Swenson called an Amtrak agent and reported an emergency. *Id.* The agent asked
6  to speak with the conductor, and Ms. Swenson passed Don the phone, who argued with the agent,
7  then returned her phone. *Id.* Ms. Swenson called the agent again and reiterated her distress, and
8  the agent told her to stay in her seat. *Id.* She was still on the phone when a police officer arrived
9  and told her to turn off the phone and come with him. *Id.* Ms. Swenson protested that the
10 Amtrak agent on the phone had told her to stay in her seat. *Id.* She was arrested, placed in
11 handcuffs, and escorted to the courthouse, where she was charged with trespassing, *id.* at 4, 8,
12 then placed in jail in Kelso, *id.* at 9. Her travel bag was impounded. *Id.* In it were her house
13 keys, car keys, prescription pain medication, clothes, makeup, and cell phone. *Id.* This left her
14 with open-toed shoes, no sweater, and a light overcoat, and she had no choice but to walk two
15 miles in the rain to find food and catch a bus home. *Id.* She has returned to Kelso four times to
16 resolve the arrest and related charges. *Id.* at 8.

17 On November 10, 2014, Ms. Swenson filed a complaint in this court, appearing
18 originally without counsel. ECF No. 1. She amended her complaint on February 6, 2015. First
19 Am. Compl., ECF No. 6. She seeks compensatory and punitive damages under claims for breach
20 of contract, personal injury, intentional infliction of emotional distress, and the Americans with
21 Disabilities Act. *Id.* at 3, 12. Amtrak moved to dismiss on March 9, 2015. Mot. Dismiss, ECF
22 No. 7. Ms. Norman appeared as plaintiff's counsel on April 8, 2015. ECF No. 10.

23 Amtrak's motion rests on three arguments. First, it argues the complaint does not
24 state a claim for breach of contract because (a) Ms. Swenson disregarded the terms and conditions
25 of her ticket and (b) does not allege Amtrak proximately caused her any damages. Mot. 6–9.
26 Second, Amtrak argues the complaint's factual allegations cannot support her claim for
27 intentional infliction of emotional distress. *Id.* at 10–12. Third, it argues the complaint's factual
28 allegations fall short of showing Amtrak's employees acted with "conscious, flagrant indifference

3

1    to the right or safety of others," and therefore all requests for punitive damages must be

2    dismissed. *Id.* at 12–15.  In opposition, Ms. Swenson disagreed on each point.  Opp'n, ECF

3    No. 9.  Amtrak replied.  Reply, ECF No. 15.

4            Amtrak does not address Ms. Swenson's general claim for personal injury under

5    the ADA, but at the hearing Ms. Swenson's counsel confirmed she asserts no claim for personal

6    injury independent of her claim for emotional distress and no claim under the ADA.  These

7    claims are therefore both dismissed with prejudice.

8    II.     LEGAL STANDARD

9            A defendant may move to dismiss for "failure to state a claim upon which relief

10   can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks

11   a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

12   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

13   assumes these factual allegations are true and draws reasonable inferences from them.  *See*

14   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15           A complaint need contain only a "short and plain statement of the claim showing

16   that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than

18   unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*,

19   556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone

20   suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).  Evaluation under Rule 12(b)(6) is a context-

21   specific task drawing on "judicial experience and common sense." *Id.* at 679.  And aside from

22   the complaint, district courts have discretion to examine documents incorporated by reference,

23   *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159–60 (9th Cir. 2012); affirmative defenses

24   based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013);

25   and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th

26   Cir. 2012).

4

III.     DISCUSSION

As noted above, Amtrak argues the complaint's factual allegations do not support a claim for relief for breach of contract, intentional infliction of emotional distress, or for punitive damages. The court considers each point in turn.

A.     Contract

California law supplies the rule of decision here. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal district courts apply the choice of law rules of the state in which they sit); Cal. Civ. Code § 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."). The elements of a contract claim are well known: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Amtrak agrees a contract exists, but argues the ticket attached to Ms. Swenson's complaint is only one part of their agreement. It also contests the complaint's adequacy on each of the final three elements of a contract claim.

1.     The Contract

Ms. Swenson has attached to her current complaint the first printed page of an emailed sales receipt. *See* First Am. Compl. 7. It shows she purchased a round-trip ticket for November 15 and 18, 2012, and several bullet points fill the receipt's bottom quarter. *Id.* The list includes, for example, Amtrak's recommendation "you arrive at the station at least 30 minutes prior to your scheduled departure"; notice that "[r]efund restriction or penalties may apply"; and, relevant here, a "Summary of Conditions of Contract." *Id.* This summary alerts the reader, among other things, that the "[t]icket is contract of carriage between Amtrak and the ticket holder which is subject to specific terms and conditions. These terms and conditions are available for inspection at Amtrak ticket counters or on the Amtrak website . . . or may be requested by"—and there the email reaches the page's end; any remaining text is cut off. *Id.*

5

To its motion Amtrak attaches the declaration of Robert Pee, Amtrak's Director of Pricing Strategy. Pee Decl. ¶ 3, ECF No. 7-1. Mr. Pee was employed in the same capacity at the time Ms. Swenson purchased her ticket. *See id.* ¶ 3. He professes by personal knowledge that Amtrak's passenger ticket terms and conditions were available at the address reproduced on Ms. Swenson's email and at Amtrak ticket offices. *Id.* ¶ 4. The terms and conditions in force as of November 2012 are attached to his declaration. *Id.* Ex. 1. The attached document is seven pages long and includes sections describing, for example, its applicability, disclaimers, limitations on liability, and conditions of carriage. *See generally id.* On the fourth and fifth pages, it provides in part as follows:

> **Carriage of Passengers**
>
> . . . In order to ensure the quality of travel and the safety and security of its passengers, Amtrak may refuse to carry passengers:
>
> - Who have not paid the applicable fare;
>
> - Whose conduct is objectionable (such as but not limited to being under the influence of alcohol or narcotics); [or]
>
> . . .
>
> - Who refuse to comply with safety or security rules or instructions of Amtrak personnel;
>
> . . .
>
> Amtrak employees or other authorized carrier representatives may remove such a passenger from the train at any inhabited place, as necessary under the circumstances, for any of the above reasons.
>
> **Seating**
>
> - On unreserved trains there are no guaranteed seats. Seating is on a first-come first served basis.
>
> - To the extent coach seats are available; each passenger paying a fare will be entitled to a seat;
>
> - No passenger may occupy more than one seat <u>to the exclusion of other passengers.</u>
>
> **Rights reserved by Amtrak**
>
> - Amtrak reserves to itself full control and discretion as to seating of passengers, and

1                 •   Amtrak reserves the right to change such seating at any time
2                    during a trip.

3            . . .

4 *Id.* at 4–5 (emphasis added). In opposition to Amtrak's motion, Ms. Swenson does not contest

5 the authenticity of this document; however, she argues its legal effect cannot be ascertained here

6 thanks to unresolved legal and factual questions. *See* Opp'n 4. She implies the terms and

7 conditions were not "an applicable portion of the written contract"; she was not aware of its terms

8 and did not consent to them; and they are "over-broad in scope or application under the

9 circumstances of this case." *Id.*

10         Ordinarily on a motion to dismiss, a district court limits its analysis to the

11 complaint's allegations, exhibits, and attachments. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068,

12 1076 (9th Cir. 2005). Nevertheless, the court may consider extrinsic information incorporated

13 into the complaint by reference. *Id.* More specifically, the court may consider documents

14 "whose contents are alleged in a complaint and whose authenticity no party questions, but which

15 are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*,

16 183 F.3d 970, 986 (9th Cir. 1999) (citation and quotation marks omitted) (alteration in original),

17 *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

18 This doctrine extends "to situations in which the plaintiff's claim depends on the contents of a

19 document, the defendant attaches the document to its motion to dismiss, and the parties do not

20 dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

21 contents of that document in the complaint." *Knievel*, 393 F.3d at 1076. Here, although the legal

22 implications of the terms and conditions attached to Amtrak's complaint are disputed, that

23 document's authenticity is not. Moreover, the portion of the sales receipt attached to the

24 complaint refers directly to terms and conditions, and Ms. Swenson's contract claims depend on

25 them. They are therefore incorporated into the complaint by reference.

26         Contract law employs a second and distinct doctrine of incorporation by reference.

27 Under California law, a document extrinsic to a contract may be incorporated into that contract by

28 reference if "(1) the reference is clear and unequivocal, (2) the reference is called to the attention

7

of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009); *see also Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008) ("The contract need not recite that it incorporates another document, so long as it guides the reader to the incorporated document." (citation, quotation marks, and alterations omitted)).  The question of incorporation is factually specific. *See Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54 (1997) ("[E]ach case must turn on its facts." (citation and quotation marks omitted)).

Here, drawing all inferences in Ms. Swenson's favor, the court lacks sufficient information to perform the analysis required by California law.  The e-ticket attached to her complaint does not refer to any additional terms and conditions; only the emailed sales receipt includes that reference.  The court cannot conclude the sales receipt was part of the parties' agreement.  It cannot conclude Amtrak called Ms. Swenson's attention to additional terms and conditions at the time they entered an agreement.  It cannot conclude the reference was clear and unequivocal or that she consented.  Factual questions such as these are ill-suited to a motion to dismiss, in contrast to the circumstances before the court in *Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 F. App'x 630 (9th Cir. 2011) (unpublished).  In that case, the plaintiff had attached both the substantive agreement in question and a number of invoices to his complaint.  *Id.* at 631.  Both the written agreement and each of the invoices unequivocally referred to terms and conditions on the plaintiffs' website.  *Id.*  Those terms and conditions required arbitration, so the district court dismissed the case and the Ninth Circuit affirmed.  *Id.* at 631–32.  What is missing from this case—and what was present in *Fadal*—is sufficient evidence of the parties' "clearly expressed . . . intent that [Swenson] would be bound by the terms and conditions [Amtrak] set."  *Id.* at 632 (citing *DVD Copy*, 176 Cal. App. 4th at 713–14, for the proposition that the parties' "unambiguous intent" allows later incorporation by reference).

    2.  <u>Performance and Breach</u>

Without more specific descriptions of the parties' agreement and for the reasons described above, the court must accept Ms. Swenson's allegations of her performance and

Amtrak's breach. Amtrak also argues, however, that Ms. Swenson has breached obligations imposed on her by California statutory law. Mot. 8:15–26 (citing *Dayton v. Yellow Cab Co. of S.F.*, 85 Cal. App. 2d 740, 744 (1948)). In *Dayton*, the plaintiff's wife had vomited in the defendant's taxi, the defendant demanded payment for the cleanup, and in the resulting "[p]hysical encounter," the plaintiff sustained a broken leg. 85 Cal. App. 2d at 741. The appellate court affirmed: "even accepting the rule of 'highest degree of care' if the cab driver were attacked he would be in no different position than anyone else in the exercise of his right to protect himself." *Id.* at 746. The court's reference to a passenger's "reciprocal obligation . . . to use all reasonable care" arose only when the court concluded a common carrier has "the same right to self protection as would anyone else." *Id.* at 744 (citing Cal. Civ. Code § 50 ("Any necessary force may be used to protect from wrongful injury the person or property of oneself . . . or guest.")). No allegations suggest Amtrak's employees were protecting themselves or other passengers from injury or that the rule of *Dayton* and the statutes it cites are applicable here.

### 3. Damages

Contract damages are limited to amounts "which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. Contract damages must be "clearly ascertainable in both their nature and origin." *Id.* § 3301. The parties' expectations at the time of contracting circumscribe any award. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time . . . .").

Here, Ms. Swenson seeks damages for the price of her ticket, her out-of-pocket expenses for finding alternative transportation from Kelso, Washington, and legal expenses associated with her detention in Kelso. *See, e.g.*, First Am. Compl. 3. The value of her ticket and the increased cost of alternative transportation are within the reasonable expectation of a person who buys a train ticket and does not arrive at her chosen destination. The motion is denied as to her contract claims.

### B. Intentional Infliction of Emotional Distress

A complaint states a claim for intentional infliction of emotional distress when it alleges (1) the defendant's conduct was outrageous; (2) the defendant either intended to cause emotional distress or acted with reckless disregard to the probability of causing emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct actually and proximately caused that emotional distress. *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988). The defendant's conduct is sufficiently "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

Here, the complaint alleges Amtrak or its agents acted outrageously and extremely, arbitrarily, vindictively, and with "harmful intent" and reckless disregard to the potential that Ms. Swenson would suffer emotional distress. *See* First Am. Compl. at 4, 10. As alleged, the conductors on the train could probably have addressed the situation with more restraint, *see id.* at 11 (conductor argued on phone with agent, who had told Ms. Swenson to stay in her seat), but the complaint includes no factual allegations to plausibly support these claims or from which the court can plausibly infer Amtrak's liability.

In the face of an "obvious alternative explanation" for the defendant's conduct, a complaint must be dismissed. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The conductors' desire to orderly remove Ms. Swenson from a seat she did not pay for, one allocated to another passenger, explains their conduct at this point better than the theory of her complaint. By her own allegation she refused to occupy only one seat and refused to pay for two. After she ignored the conductors' instructions, they called the police to escort her from the train, not to arrest and cuff her. Even if the complaint could be read to infer Amtrak's intent or reckless disregard, its allegations do not show Amtrak's actions exceeded all bounds of conduct usually tolerated in civil society. The motion is granted with leave to amend.

### C. Punitive Damages

The complaint seeks punitive damages. Under California law, "[i]n an action for the breach of an obligation not arising from contract," a plaintiff may recover punitive damages if

she proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  Congress has partially preempted state law on this point, however.  *See Deweese v. Nat'l R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 249 (3d Cir. 2009); *Miller v. Illinois Cent. R. Co.*, 474 F.3d 951, 952 (7th Cir. 2007); *Haynes v. Nat'l R.R. Passenger Corp.*, 423 F. Supp. 2d 1073, 1086 (C.D. Cal. 2006).  A court may award punitive damages against Amtrak "only if the plaintiff establishes by clear and convincing evidence that the harm that is the subject of the action was the result of conduct carried out by the defendant with a conscious, flagrant indifference to the rights or safety of others."  49 U.S.C. § 28103(a)(1).

Nonetheless, the federal statute limits punitive damages awards to those "permitted by applicable state law." *Id.*  Because California law prohibits the award of punitive damages for a contract claim, and because the court has granted Amtrak's motion to dismiss the claim for intentional infliction of emotional distress, the request for punitive damages is dismissed with leave to amend.

IV.     CONCLUSION

This order disposes of ECF No. 7.  The motion is GRANTED IN PART and DENIED IN PART.  In particular, the court orders as follows:

(1) The claim for intentional infliction of emotional distress is dismissed with leave to amend.

(2) The request for punitive damages is dismissed with leave to amend.

(3) The claims under the ADA and for personal injury independent of emotional distress are dismissed with prejudice.

(4) In all other respects the motion is denied.

(5) An amended complaint shall be filed within twenty-one days.  In the interest of an efficient resolution of this matter, it must be printed in typeface no smaller than twelve-point Times New Roman with a spacing twenty-four points or greater, *i.e.*, double spacing.  Each paragraph must be sequentially numbered.  Exhibits or attachments must be appended together at the conclusion of the amended complaint and must be labeled by letter, *i.e.* A, B, C, etc.

1  (6) After an amended complaint is filed, this case is referred to a mandatory settlement conference before another judge of this court.

2  (7) Magistrate Judge Edmund F. Brennan has been randomly selected as the settlement judge. A settlement conference is scheduled before Judge Brennan for January 7, 2016 at 10:00 a.m. in Courtroom No. 8, 13th Floor.

The parties are directed to submit their confidential settlement conference statements to the Court using the following email address: efborders@caed.uscourts.gov. If a party desires to share additional confidential information with the Court, they may do so pursuant to the provisions of Local Rule 270(d) and (e). Statements are due at least 7 days prior to the Settlement Conference. Each party is reminded of the requirement that it be represented in person at the settlement conference by a person able to dispose of the case or fully authorized to settle the matter at the settlement conference on any terms. *See* Local Rule 270.

IT IS SO ORDERED.

DATED: October 22, 2015.

_____
UNITED STATES DISTRICT JUDGE