UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THERESE SWENSON,

          Plaintiff,

     v.

NATIONAL RAILROAD PASSENGER
CORPORATION, doing business as
AMTRAK, et al.,

          Defendants.

No.  2:14-cv-02629-KJM-CMK

ORDER

       Theresa Swenson is suing the National Railroad Passenger Corporation, commonly known as Amtrak, for expelling her from a train in Kelso, Washington.  Amtrak moves to dismiss two of her claims and to strike other portions of her complaint.  The matter was submitted for decision without oral argument, and for the following reasons, the motion is granted in part.

/////

/////

/////

/////

/////

1

1   I.        ALLEGATIONS

2        A.        The Third Amended Complaint[1]

3            In her current complaint, Ms. Swenson alleges as follows:  In November 2012, she

4   purchased a round-trip ticket from Dunsmuir, California, to Seattle, Washington.  Third Am.

5   Compl. ¶ 1, ECF No. 25.  She was assigned a seat.  *See id.*  On the way to Seattle, a man sat next

6   to her, and Ms. Swenson asked a conductor if she could change her seat.  *Id.* ¶ 13.  The conductor

7   said she could not.  *Id.*  She suspected her request had been wrongfully denied, so after she

8   arrived in Seattle, she called Amtrak's customer service office to ask.  *Id.*  An agent told her she

9   could always change her seat when the car is not full.  *Id.*

10           On the return trip from Seattle, no more than a quarter of the seats was ever

11  occupied.  *Id.* ¶ 1.  Swenson did not leave her seat and did not request a different seat.  *Id.*  After

12  the Olympia, Washington stop, the conductor seated a newly arrived passenger directly next to a

13  man a few rows in front of Ms. Swenson.  *Id.* ¶ 2.  The man left his seat and moved to another

14  vacant seat nearby.  *Id.*  The conductor did not mind, and the man was not asked to pay for

15  another seat or return to his original seat.  *Id.*

16           Soon another new passenger arrived, and the conductor directed her to a seat next

17  to Ms. Swenson.  *Id.* ¶ 3.  Ms. Swenson took her belongings from the seat where the newly

18  arrived passenger was to sit, and requested the conductor allow her to move to a nearby seat, just

19  as the man in front of her had done.  *Id.*  The conductor told her she could not move unless she

20  bought a second ticket.  *Id.*  The newly arrived passenger intervened and told the conductor she

21  did not want to sit at all but to spend the trip in the bar car and left.  *Id.*

22           The problem seemed to have resolved itself, but the conductor persisted in arguing

23  about the seat.  *Id.* ¶ 4.  She was angry that Ms. Swenson had challenged her authority.  *Id.*  In a

24  /////

25  _____

26  [1] The court uses Swenson's designation for the operative complaint, the "Third Amended
Complaint," although her complaint has been amended only twice.  *See* Compl., ECF No. 1, First
27  Am. Compl., ECF No. 6; Third Am. Compl., ECF No. 25.  It may be that counsel has seen a
pleading that was never filed.  *See* Third Am. Compl. at 1 (referring to the second amended
28  complaint); Opp'n at 6, ECF No. 28 (same).

few minutes, a second conductor, Don Grady, arrived.[2]  *Id.* ¶ 5.  He told Ms. Swenson they had

called the police in Kelso and officers would remove her from the train at the next stop.  *Id.*  The

conductors left, and Ms. Swenson stayed in her seat.  *Id.*  She called the Amtrak customer service

line and asked to speak to someone about her predicament.  *Id.* ¶ 6.  The agent on the phone told

her she was free to move to another seat.  *Id.*  During the call, one of the conductors returned, and

the agent agreed to speak to the conductor.  *Id.*  They spoke, then the conductor gave Swenson her

phone again, and the call continued.  *Id.*  Ms. Swenson asked the agent on the phone what she

should do, and the agent said to stay in her seat.  *Id.* ¶ 7.  Ms. Swenson also looked at Amtrak's

website, which confirmed "a passenger may select any other vacant seat that is available in the

assigned car" if the car is not full.  *Id.* ¶ 8.  But the conductors held to their position.  *See id.* ¶ 9.

Police were waiting at the Kelso stop when the train arrived.  *Id.* ¶ 11.  They came

to Ms. Swenson, who was again on the phone with an Amtrak customer service agent.  *Id.*  The

agent asked to speak to the police, but the officers would not agree to speak to the agent.  *Id.*  The

agent again told Ms. Swenson to stay in her seat.  *Id.*  She did, and the officers handcuffed her,

took her off the train, and at the conductor's request took her into custody for trespass.  *Id.*  The

Amtrak conductors did not interfere or ask the police not to arrest her, cuff her, or take her into

custody.  *Id.* ¶ 12.  Neither did Amtrak contact the District Attorney's office to ask that no formal

charges be pressed.  *Id.*

Ms. Swenson alleges that as a result of her arrest, she suffered great distress, which

lingered for nearly eighteen months.  *Id.* at 8.  She asserts claims for breach of contract and

intentional and negligent infliction of emotional distress against Amtrak, two individuals (Don

Grady and Bridget Carrington) and ninety-eight Doe defendants (her previous complaints alleged

claims against one hundred Doe defendants).  She seeks compensatory, consequential, and

punitive damages, attorneys' fees and costs, and whatever other relief the court may award.  *Id.*

at 14.

---

[2] Swenson does not specify the name of the first conductor, although Bridget Carrington's name appears in the caption.

1    B.    Procedural History

2         Ms. Swenson filed her complaint in this court in November 2014, ECF No. 1, and

3    amended it in February 2015, ECF No. 6.  At the time she appeared without counsel.  Although

4    she has asserted essentially the same claims in each of her complaints—breach of contract and

5    infliction of emotional distress—her previous complaints differ from her current complaint in

6    three ways worth noting.  First, she previously alleged that when she called Amtrak customer

7    service before her return trip from Seattle, she was worried about "being confined to a single

8    seat" for fifteen hours rather than moving from one seat to another.  *Compare* First Am. Compl.

9    at 11,[3] *with* Third Am. Compl. ¶ 13.  Second, she alleged that on the way back from Seattle, she

10   asked a conductor whether "she could move to the empty seats" behind her, not whether she

11   could move to another single seat.  *Compare* First Am. Compl. at 11, *with* Third Am. Compl. ¶ 3.

12   And third, she alleged significantly more about what happened after she was removed from the

13   train in Kelso, as the court summarized in its previous order:

14              She was arrested, placed in handcuffs, and escorted to the
                courthouse, where she was charged with trespassing, [First Am.
15              Compl.] at 4, 8, then placed in jail in Kelso, *id.* at 9.  Her travel bag
                was impounded.  *Id.*  In it were her house keys, car keys,
16              prescription pain medication, clothes, makeup, and cell phone.  *Id.*
                This left her with open-toed shoes, no sweater, and a light overcoat,
17              and she had no choice but to walk two miles in the rain to find food
                and catch a bus home.  *Id.*  She has returned to Kelso four times to
18              resolve the arrest and related charges.  *Id.* at 8.

19   Order Oct. 23, 2015, at 3, ECF No. 23.  Her current complaint includes none of these details.

20        Amtrak moved to dismiss the First Amended Complaint in March 2015.  ECF

21   No. 7.  Ms. Swenson was represented by counsel in opposition to that motion.  The motion was

22   denied with respect to her contract claims and granted with respect to her claim for emotional

23   distress and her request for punitive damages.  Order Oct. 23, 2015, ECF No. 23.  She was

24   allowed leave to amend.  *Id.*  Counsel prepared the Third Amended Complaint, which alleges

25   claims for breach of contract, negligent infliction of emotional distress, and intentional infliction

26   of emotional distress and devotes a separate section to her request for punitive damages.  *See*

27

28        [3] Citations to these complaints are to the page numbers applied by the CM/ECF system.

4

1  Third Am. Compl. at 12–14.  Ms. Swenson also joined Don Grady and Bridget Carrington as

2  defendants.

3          Amtrak moved to dismiss the Third Amended Complaint on November 19, 2015.

4  ECF No. 27.  It also moved to strike several specific passages.  *See id.* at 2–3.  Swenson opposed

5  the motion, ECF No. 28, and Amtrak replied, ECF No. 32.

6  II.     LEGAL STANDARDS

7          A.      Motions to Dismiss under Rule 12(b)(6)

8          A defendant may move to dismiss for "failure to state a claim upon which relief

9  can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks

10  a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

11  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

12  assumes these factual allegations are true and draws reasonable inferences from them.  *See*

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

14          A complaint need contain only a "short and plain statement of the claim showing

15  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"

16  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than

17  unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*,

18  556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone

19  suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Evaluation under Rule 12(b)(6) is a context

20  specific task drawing on "judicial experience and common sense."  *Id.* at 679.

21          B.      Motions to Strike under Rule 12(f)

22          A court may strike any portion of a pleading that is "redundant, immaterial,

23  impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  This rule is meant to avoid unnecessary

24  expenditures of time and money over "spurious issues."  *Whittlestone, Inc. v. Handi-Craft Co.*,

25  618 F.3d 970, 973 (9th Cir. 2010) (citation and quotation marks omitted).  A motion under Rule

26  12(f) should not be granted "unless it is clear the matter to be stricken could have no possible

27  bearing on the subject matter of the litigation."  *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159,

28  1170 (E.D. Cal. 2005) (citation and quotation marks omitted).

5

1    III.    DISCUSSION

2              On its own motion, the court first addresses the complaint's contract claim, then

3    turns to the motions to strike and to dismiss.

4         A.    Contract Claims

5              As summarized above, Ms. Swenson's previous complaints alleged claims for

6    breach of contract, and Amtrak's motion to dismiss this claim was denied.  *See* Order Oct. 23,

7    2015, at 11.  She was granted leave to file an amended complaint, and the court ordered that any

8    amended complaint follow certain typeface and formatting conventions.  *See id.* at 11–12.  Now

9    represented by an attorney, Ms. Swenson amended her complaint.  Aside from a few paragraphs

10   without numbers, the complaint fits the specifications the court directed.  But in her current

11   complaint, Ms. Swenson writes that she "incorporates by reference in full herein [her] Second

12   Amended Complaint cause of action for Breach of Contract as plead therein, including all

13   associated attachments previously filed therewith."  Third Am. Compl. at 2.

14             For three reasons, the contract claim cannot be incorporated by reference.  First, as

15   a general rule, an amended complaint supersedes the original.  *Lacey v. Maricopa Cnty.*, 693 F.3d

16   896, 927 (9th Cir. 2012) (en banc).  For this reason, this District has adopted Local Rule 220,

17   which requires that every pleading must be "complete in itself without reference to the prior or

18   superseded pleading," and "[n]o pleading shall be deemed amended or supplemented until this

19   Rule has been complied with."  In other words, an amended complaint must stand on its own legs,

20   and whatever claims and allegations are absent from that document are absent from the case.[4]

21             Second, as the understandable result of her lack of legal training and

22   representation, Ms. Swenson's previous complaints were unorganized and difficult to read.  The

23   court imposed formatting and typeface requirements in an effort to promote clarity.  Ms. Swenson

24   cannot be faulted for her inexperience, but her attorney ignores the spirit of the court's previous

25   order by incorporating the previous complaints only by reference.

26

27             [4] Nothing said here conflicts with the rule that to preserve a claim for appeal, a plaintiff
     may rely on a previous complaint for any claim dismissed with prejudice.  *See Lacey*, 693 F.3d

28   at 928.  This exception is not relevant here because the contract claim was not dismissed.

6

1    Third, Ms. Swenson's current complaint appears to allege contract claims against

2   all of the defendants, including Grady, Carrington and the ninety-eight unidentified Doe

3   defendants, but she does not describe what role any of these defendants had in the contract

4   relationship or how they breached the contract.  Without this information, the complaint does not

5   state a claim against any defendant but Amtrak itself.  *See* Cal. Civ. Code § 1550 (the defendant's

6   consent is essential to the formation of a contract); *First Commercial Mortg. Co. v. Reece*, 89 Cal.

7   App. 4th 731, 745 (2001) (the defendant's breach is an element of every contract claim).

8    The claim for breach of contract is dismissed with leave to amend.  The court

9   reserves judgment on the possibility that contract claims could be asserted against the individual

10   defendants, but reminds counsel of her obligations under Federal Rule of Civil Procedure 11(b).

11    B.    Motion to Strike

12    Amtrak's motion to strike targets two aspects of the Third Amended Complaint.

13   First, it argues Ms. Swenson must not be allowed to allege claims against Grady, Carrington, and

14   the Doe defendants.  *See* Mot. at 6.  Amtrak cites the first footnote of this court's previous order,

15   which warned Swenson that claims against Doe defendants would be dismissed if "it is clear that

16   discovery would not uncover the[ir] identities or that the complaint would be dismissed on other

17   grounds."  Order Oct. 23, 2015, at 1 n.1 (quoting *Wakefield v. Thompson*, 177 F.3d 1160, 1163

18   (9th Cir. 1999)).  In the same footnote the court warned Ms. Swenson that Federal Rule of Civil

19   Procedure 4(m) applies to Doe defendants, who will be dismissed if not served within 120 days

20   (now 90 days) of the date the complaint was filed.  *Id.*

21    The motion cannot be granted in this respect.  The previous filings were prepared

22   before Ms. Swenson secured representation, and Amtrak has identified no concrete prejudice it

23   faces as a result of the possible joinder of new defendants.  Although this case began in 2014,

24   Amtrak has not yet answered the complaint.  Good cause exists to allow the joinder of defendants

25   Grady and Carrington to this lawsuit.  On the other hand, good cause does not allow the

26   remaining ninety-eight Doe defendants to continue in this case.  Their role remains utterly

27   unclear.  The motion is granted in this respect, and the Doe defendants are accordingly dismissed.

28

1             Second, in the alternative to its motion to dismiss Swenson's claims for infliction

2   of emotional distress, Amtrak moves to strike several specific paragraphs of the Third Amended

3   Complaint, which it argues are redundant, immaterial, or scandalous.  *See* Mot. Dismiss at 12–13.

4   For example, it requests the following passages be stricken:

5               The conductor's refusal to allow the plaintiff to move seats and her
demand that plaintiff pay for a second seat demand [sic] was made
6               in bad faith, malicious and with discriminatory application given
the fact that the car was nearly empty, the plaintiff was well within
7               her right to relocate her seat, and that the conductor allowed another
passenger to change his seat under the same circumstances just a
8               few moments earlier.

9   Third Am. Compl. at 3:9–14.

10              Plaintiff had done no act to justify her ejection from the train or
have law enforcement called.  All she had done was to request a
11             different seat from the conductor, which was refused by the
conductor, and to attempt to phone to reach someone with higher
12             authority at Amtrak to again get confirmation from Amtrak that
moving her seat was permitted if there were vacant seats available
13             on the car.

14   *Id.* ¶ 8.

15              Plaintiff had no obligation to purchase a second seat as demanded
by the conductor pursuant to her request to change seats, and such
16             demand by the conductor was unreasonable, arbitrary, capricious,
cruel, and without legal or factual justification warranting plaintiff's
17             removal from the train.

18   *Id.* ¶ 10.

19             These allegations are not the sort of redundant, scandalous, or irrelevant statements

20   that may be stricken under Rule 12(f), but rather describe Ms. Swenson's theory of this case.  *Cf.,*

21   *e.g.*, *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510

22   U.S. 517 (1994) ("Superfluous historical allegations are a proper subject of a motion to strike.");

23   *Harris v. Bear Valley Cmty. Serv. Dist.*, No. 12-01664, 2013 WL 4402823, at *4 (E.D. Cal. Aug.

24   14, 2013) (striking a duplicate paragraph); *Wynes v. Kaiser Permanente Hosps.*, No. 10-00702,

25   2010 WL 3220137, at *9 (E.D. Cal. Aug. 13, 2010) (striking allegations of racial and ethnic

26   discrimination because the complaint included no discrimination claim).  This aspect of the

27   motion is denied.

28

1    C.    Motion to Dismiss

2         1.    Intentional Infliction of Emotional Distress

3              A complaint states a claim for intentional infliction of emotional distress when it

4    alleges (1) the defendant's conduct was outrageous; (2) the defendant either intended to cause

5    emotional distress or acted with reckless disregard to the probability of causing emotional

6    distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct

7    actually and proximately caused that emotional distress. *Nally v. Grace Cmty. Church*, 47 Cal. 3d

8    278, 300 (1988).  The defendant's conduct is sufficiently "outrageous" when it is "so extreme as

9    to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of*

10   *Westminster*, 32 Cal. 3d 197, 209 (1982).

11             Here, the court is confronted by Ms. Swenson's two conflicting theories of

12   Amtrak's liability.  According to her previous complaints, she requested to use two seats due to

13   pain in her legs, and Amtrak denied her request because she had paid for only one.  *See* First Am.

14   Compl. at 11.  Now she alleges she asked to move to a new seat, not to use two.  *See* Third Am.

15   Compl. ¶¶ 3, 13.  An amended complaint may only allege "facts consistent with the challenged

16   pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (citation and

17   quotation marks omitted).  The court need not accept the truth of a plaintiff's inconsistent factual

18   allegations. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144–45 (N.D. Cal.

19   2010); *see also Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) (an allegation may

20   serve as a judicial admission).  A litigant may take inconsistent positions in its pleadings, *PAE*

21   *Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007), but must normally explain the

22   inconsistency so the court may "accord the explanation due weight," *Sicor*, 51 F.3d at 859;

23   *Stearns*, 763 F. Supp. 2d at 1145.

24             In light of her inconsistent pleadings and the absence of any explanation for this

25   inconsistency, the court does not assume the truth of plaintiff's later allegations.  Her claim for

26   intentional infliction of emotional distress must therefore be dismissed for the reasons in the

27   court's previous order:

28

> The conductors' desire to orderly remove Ms. Swenson from a seat she did not pay for, one allocated to another passenger, explains their conduct at this point better than the theory of her complaint. By her own allegation she refused to occupy only one seat and refused to pay for two.   After she ignored the conductors' instructions, they called the police to escort her from the train, not to arrest and cuff her.  Even if the complaint could be read to infer Amtrak's intent or reckless disregard, its allegations do not show Amtrak's actions exceeded all bounds of conduct usually tolerated in civil society.

Order Oct. 23, 2015, at 10.

In addition, the court notes that contrary to Ms. Swenson's argument in her opposition brief, she cannot bootstrap a factual dispute from Amtrak's belief that its employees acted reasonably.  *See* Opp'n at 4.  If this were possible, a claim for intentional infliction of emotional distress could rest on the most trivial *faux pas*.  The standard described by the California Supreme Court is not whether the plaintiff found the defendant's conduct outrageous, but whether the defendant's conduct falls outside a range tolerated by society at large.  *Davidson*, 32 Cal. 3d at 209.

In light of the court's previous order and Ms. Swenson's attempt to plead an alternative and inconsistent theory of Amtrak's liability without explanation, the court finds an amendment would prove wasteful and futile.  The motion to dismiss this claim is granted without leave to amend.

## 2.   Negligent Infliction of Emotional Distress

In California, "there is no independent tort of negligent infliction of emotional distress."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993).  "The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element."  *Id.*  Unless a defendant assumed a duty to the plaintiff and the object of that duty was the plaintiff's emotional condition, a plaintiff may recover "only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."  *Id.* at 985.  "Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests."  *Id.*

Swenson's negligence claim arises from her contractual relationship with Amtrak as a common carrier.  *See* Third Am. Compl. at 9:7–11 ("As a common carrier, Amtrak owed a duty of good faith and fair dealing to plaintiff under contract.  The breach of this duty owed to the plaintiff resulted when her purchased ticket was voided in Kelso, Washington . . . ."); *id.* at 10:3–4 (alleging the contract created "a relationship with unique duties of care and conduct").  A common carrier may be liable in tort if it does not fulfill a contractual duty to deliver its passengers to an agreed-upon destination.  *Ingham v. Luxor Cab Co.*, 93 Cal. App. 4th 1045, 1051 (2001); *see also Erlich*, 21 Cal. 4th at 551 n.1 (noting the distinction between contract and tort claims in this context).  The "seminal case" is *Sloane v. Southern California Railway Co.*, 111 Cal. 668 (1896), where the California Supreme Court confirmed that a passenger wrongfully ejected from a train could seek either tort or contract remedies.  *See Ingham*, 93 Cal. App. 4th at 1051 (citing *Sloane*, 111 Cal. at 676–77).  In this situation, "[d]amages may be had for harm suffered in leaving the discharge point, whether it be physical injury, illness due to weather conditions during the walk, or inconvenience caused by the ejectment."  *Id.* at 1052 (citations omitted).  Whether and to what extent damages are available for emotional distress is a more complicated question, *see Lawson v. Mgmt. Activities, Inc.*, 69 Cal. App. 4th 652, 660–68 (1999), one the court does not address here given Amtrak's facile assertion that this case involves none of the circumstances in which tort damages are recoverable, *see* Mot. at 11, and Swenson's silence in response.

It is unclear from the complaint whether Ms. Swenson alleges she suffered the sort of harm courts have permitted in passenger-expulsion cases.  *See* Third Am. Compl. at 12.  In an amended complaint, she could include allegations from her previous complaints, which included more detail about her damages, *see* First Am. Compl. at 4, 8, 9, but as discussed above, a complaint's previous iterations may not be incorporated by reference, E.D. Cal. L.R. 220.  This claim is therefore dismissed with leave to amend.

3.    Punitive Damages

Because each of Swenson's claims has been dismissed, the court need not address whether her request for punitive damages must be stricken or dismissed.  A request for punitive

11

damages may be included in an amended complaint, if that may be done within the confines of Rule 11.

IV.     <u>CONCLUSION</u>

The motion to strike is GRANTED IN PART.  The remaining Doe defendants are DISMISSED and stricken from the caption.

The claims for breach of contract and negligence are DISMISSED with leave to amend.  The claim for intentional infliction of emotional distress is DISMISSED without leave to amend.  A fourth amended complaint shall be filed within twenty-one days, after which the court anticipates allowing no further amendments.

This order resolves ECF No. 27.

IT IS SO ORDERED.

DATED:  April 19, 2016.


_____
UNITED STATES DISTRICT JUDGE